## IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **RICHARD MIRES** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:19-cv-1045** |
| | § | **JURY DEMANDED** |
| **HAVEN FOR HOPE OF** | § | |
| **BEXAR COUNTY,  WALLACE RICH,** | § | |
| **and JERALD MARTIN** | § | |
| *Defendants* | § | |

### PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff Richard Mires ("Plaintiff" or "Mires") files this Complaint and Jury Demand against Defendant Haven for Hope of Bexar County ("Haven for Hope"), Defendant Wallace Rich ("Rich"), and Defendant Jerald Martin ("Martin") (collectively "Defendants") and would respectfully show the Court as follows:

### A. Parties

1.      Plaintiff Richard Mires is an individual residing in Bexar County, Texas.

2.      Defendant Haven for Hope of Bexar County is a registered 501(c)(3) nonprofit organization and can be served with process through its registered agent, Greg Matula, at 2330 N. Loop 1604 West, San Antonio, Texas 78248.

3.      Defendant Wallace Rich is an individual.  Defendant Rich can be served at his place of employment located at 1 Haven for Hope Way, San Antonio, Texas 78207. Rich is the Facilities Director and Human Services Director for Haven for Hope.  Rich: (1) possessed the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of pay; and/or (4) maintained employment records.

4.      Defendant Jerald Martin is an individual.  Defendant Martin can be served at his place of employment located at 1 Haven for Hope Way, San Antonio, Texas 78207. Martin is a Manager at Haven for Hope.  Martin: (1) possessed the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of pay; and/or (4) maintained employment records.

## B. Jurisdiction and Venue

5.      The Court has subject matter jurisdiction because this action arises under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601 *et seq.*

6.      Moreover, this Court has jurisdiction over this matter according to 28 U.S.C. § 1331.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in San Antonio, Bexar County, Texas, which is in this District.

## C. Facts

8.      Mires has worked fulltime for Haven for Hope since August 2010. He began as a custodian and worked his way up to his most recent position, Custodial Maintenance Supervisor, with direct management over thirteen custodial team members.

9.      On Friday, June 7, 2019, Mires's wife, Ruth Garza-Mires ("Garza-Mires"), received a breast cancer diagnosis. Mires informed Facilities Director Rich, who also serves as Human Services Director, about the diagnosis on Monday, June 10, 2019. Rich was originally supportive and gave Mires FMLA paperwork to complete. Mires informed Rich that he intended to keep working until Garza-Mires's surgery date, which she was still in the process of scheduling.

Rich told Mires that he could fill the FMLA paperwork out at his convenience when Mires knew more about the surgery.

10.     Importantly, the FMLA paperwork Rich gave Mires was *not* a Notice of Eligibility and Rights & Responsibilities, which if properly presented would have given Mires at least fifteen days to obtain completed certification documents from his wife's physician. Instead, Haven for Hope skipped the Notice of Eligibility completely and simply provided him with the Department of Labor's Certification of Health Care Provider for Employee's Serious Health Condition.[1] This Certification did not contain any deadline for Mires to return the completed form, and Haven for Hope never informed Mires there was a deadline for him to complete and return the form.

11.     Mires continued to work fulltime following his wife's diagnosis.

12.     On or about June 24, 2019, Organizational Development and Employee Wellness Consultant Donna Costa ("Costa") and Manager Martin approached Mires. Costa and Martin informed Mires that they were concerned he was distracted at work due to his wife's health and that Haven for Hope was giving Mires three weeks of "discretionary leave." They advised Mires that he should use the period of take care of himself and his family. However, Haven for Hope informed Mires that, on his return, he would lose his supervisory position and that his pay would change from salary to hourly.

13.     Although Haven for Hope presented this discretionary leave to Mires as an employment benefit, he was not given an option of refusing the leave and continuing to work. He also was not given a choice of declining his demotion. Moreover, Mires had never heard of Haven

---

[1] Even if Haven for Hope had first properly presented Mires with his Notice of Eligibility, Haven still did not give Mires the appropriate form. Since the FMLA leave was not for Mires's own serious health condition, Haven should instead have given Mires the Certification of Health Care Provided for Family Member's Serious Health Condition, which requires similar but not identical information.

for Hope offering discretionary leave to any other employee in this type of situation in his nine years of employment. Costa and Martin told Mires to return to work on July 15, 2019. Mires responded that he anticipated his wife's surgery occurring around the middle of July. Costa and Martin did not mention FMLA during this conversation. They also did not inform Mires about any additional obligations or instructions for his leave of absence.

14.     On Friday, June 28, 2019, during Mires's leave of absence, Martin texted Mires and asked him to "stop by next week an[d] spend some time with an[d] go over space planning." Mires agreed to come to the office on Monday, July 1, 2019. During that conversation, Martin again did not mention any additional obligations or instructions for Mires's leave of absence.

15.     On July 9, 2019, Mires and Mires-Garza met with her oncologist and learned that Mires-Garza's health situation was more serious than previous believed and she would need two surgeries, several months apart. The same day, Mires and Mires-Garza scheduled the first surgery for July 17, 2019 and requested that the oncologist complete the FMLA paperwork Haven for Hope had given Mires. The oncologist assured Mires that the completed paperwork would be ready by July 24. Because Haven for Hope had never given Mires a deadline to return the completed paperwork, he believed that July 24 would be acceptable to Haven for Hope.

16.     Mires promptly informed Human Resources and Jerald Martin about the upcoming surgery by email. In that email, Mires requested an additional week of PTO, which was approved.

17.     Mires-Garza was admitted to the hospital for surgery on July 17, 2019. That day, Mires texted Martin, "Wife is in surgery now. Please let everyone know. Thanks Jerald." Martin responded, "Yes sir will pray for her stay strong my friend." Mires-Garza was released the next day.

18.     On Friday, July 19, at 4:03 p.m., while Mires was purchasing gauze and medical tape to replace Mires-Garza's surgery bandages, Mires received a text message from Martin. Martin wrote, "Good afternoon, joe an[d] I would like to talk to you can you make time to give us a call within the next 10 minutes." Eleven minutes later, when Mires had not even seen the text message yet, Martin wrote, "I haven't heard from you since we met a few weeks ago, I need to hear from you by 4:30 or I will see this as job abandonment."

19.     Martin's statement that he had not heard from Martin since they had met a few weeks ago is untrue. In addition to Mires coming in during his leave to discuss space planning on July 1, he sent an email to Martin and to HR immediately on learning of his wife's surgery date. He also sent a text message to Martin only two days previously while Mires-Garza was undergoing surgery.

20.     Mires was shocked and immediately called Martin. Martin informed Mires that if he agreed to take a $5,000 reduction in pay and undergo a drug test, he could return to work the next Monday. Mires told his boss that he did not understand why his pay had to be reduced, and Martin responded that Haven for Hope would move forward with termination for job abandonment.

21.     After this phone call, Mires wrote the following text message to Martin at 6:48 p.m.:

> Jerald, I would like to come in at 8am Monday morning to discuss why Haven is moving forward with this decision. I've followed all of Haven's directives. The checking in part was not related clearly and I in fact did send you & HR an email requested an extra week of PTO stating the exact day of surgery. I know it was received because the PTO was approved. I haven't abandoned my job, I was focusing on my family needs and have every intention of returning with what was discussed when I left. I would hope Haven would reconsider this distressing decision.

Martin responded, "Rich I explained to you before you left that I needed you to call me every Friday to check in with me an[d] then I told you again when you came by a few weeks ago an[d] you told me you were sorry that you had been busy an[d] I told you that it's mandatory that you call me every Friday until you return to work. So it was explained very clearly[.]"

22.     Martin's claim that he had informed Mires he needed to call in every Friday is untrue. Mires has no recollection that Martin ever asked him to call in every Friday or ever imposed any sort of notification requirement on Mires. If Martin had in fact asked Mires to call him every Friday—or at any other time—during his leave of absence, Mires would have complied.

23.     Mires sent an email to Kenneth Wilson, the Haven for Hope CEO, that same Friday evening. Mires expressed concern that he was being terminated for job abandonment when no one had told him to call and check in during his discretionary leave. Mires noted that during his discretionary leave, he had stayed in touch with Martin and with Human Resources and had even come in to work at Martin's request during the leave. Mires concluded, "For the past 9 years, I have dedicated myself to Haven for Hope and never expected things to end this way. I would like to return and do my job without having to agree to something that was never discussed with me. While $5,000 may not seem like a lot, the medical bills are outstanding and we're just at the beginning state. I don't understand why Haven is choosing to handle the situation in this manner and would love a moment to discuss directly with you."

24.     On Monday, July 22, 2019 at 10 a.m., Mires met with Martin. Mires had planned to advise that Mires-Garza's oncologist had almost completed the FMLA forms, which anticipated that Mires would need approximately six weeks of FMLA leave to take care of his wife following her surgery. However, following Haven for Hope's threat to terminate Mires for job abandonment if he would not accept a $5,000 reduction in pay, Mires had scrambled over the weekend to locate

back up care for his wife. Accordingly, Mires planned to tell Martin that he would only need intermittent leave to care for his wife because he had made arrangements for friends and family members to pitch in and help Mires-Garza recover.

25.     However, Martin did not give Mires a chance to reveal any of this—instead, Martin met Mires flanked by two security guards and a box filled with Mires's personal belongings. Martin informed Mires that he was terminated effective immediately and Mires needed to turn in his badge and keys. Mires did so and left the campus.

26.     The same day, Mires received a call from Wilson, the CEO, asking why Mires had not called in during the discretionary leave. Mires explained to Wilson that he had never been asked to call in during his leave. Mires asked Wilson why Haven for Hope had sought to reduce his wages by $5,000 when he needed his salary the most, since his family was facing increased medical expenses. Wilson advised that Haven for Hope had made a decision and that Wilson had to support it.

27.     On information and belief, Haven for Hope forced Mires to accept a discretionary leave of absence in an attempt to avoid the mandatory impact of Mires taking leave protected by FMLA. In particular, Haven for Hope appears to believe that because Mires was given a discretionary leave of absence instead of properly classifying his leave as protected by the FMLA, Haven for Hope could illegally demote Mires, reduce his pay, and eventually terminate him. However, because Haven for Hope should have classified Mires's leave as protected by the FMLA, it cannot avoid the protections Mires should have been afforded under the FMLA.

### D. Causes of Action

**First Cause of Action**
**FMLA Interference**

28.     Plaintiff incorporates by reference all of the allegations made above.

29.     Plaintiff is an eligible employee within the meaning of the FMLA. Plaintiff was employed by Defendant for at least 12 months and for at least 1,250 hours of service during the previous 12-month period. *See* 29 U.S.C. §2611(2).

30.     Plaintiff was entitled to 12 workweeks of leave per leave year because his wife from a serious health condition.

31.     Plaintiff gave his employer practicable notice when the leave was needed.

32.     Plaintiff provided all necessary information related to his wife's serious health condition.

33.     It is unlawful for an employer to interfere with, restrain, or deny the exercise of any right provided by the FMLA. 29 U.S.C. §2615(a)(1). FMLA rights include requesting or taking leave under the FMLA and once leave is completed, being restored by the employer to the position of employment the employee held when leave commenced, or to an equivalent position of employment with equivalent employment benefits, pay, or other terms and conditions of employment. 29 U.S.C. §2612(a)(1); 29 U.S.C. §2614(a)(1); 29 U.S.C. §2614(c)(1).

34.     Defendants intentionally interfered with and/or denied Plaintiff's exercise of rights provided under the FMLA by: (a) not properly informing Plaintiff of his rights under the FMLA; (b) not complying with the notice provisions of the FMLA; (c) not properly classifying leave as protected by the FMLA even though Defendants had sufficient knowledge to properly classify leave as protected by the FMLA; (d) demoting him to non-supervisory position because he was going to take leave protected by the FMLA; (e) changing his pay structure because he was going

to take leave protected by the FMLA: (f) decreasing his pay by $5,000.00 because he was going to take leave protected by the FMLA; (g) failing to restore him to the position of employment he held when leave commenced, or to an equivalent position of employment with equivalent benefits, pay or other term and conditions of employment; and (h) by using his FMLA-protected absences as a basis for Defendants' decision to terminate him.

**Second Cause of Action**
**FMLA Retaliation**

35.     Plaintiff incorporates by reference all of the allegations made above.

36.     Plaintiff is an eligible employee within the meaning of the FMLA. Plaintiff was employed by Defendant for at least 12 months and for at least 1,250 hours of service during the previous 12-month period. *See* 29 U.S.C. §2611(2).

37.     Plaintiff was entitled to 12 workweeks of leave per leave year because his wife from a serious health condition.

38.     Plaintiff gave his employer practicable notice when the leave was needed.

39.     Plaintiff provided all necessary information related to his wife's serious health condition.

40.     It is unlawful for an employer to discriminate or retaliate against an employee for engaging in FMLA-protected activity. 29 U.S.C. §2615(a)(1 and 2).

41.     Plaintiff engaged in FMLA-protected activity by requesting leave; taking leave; and asserting his rights under the FMLA, including notifying his employer that he would need an FMLA-qualifying leave of absence. Defendants discriminated and/or retaliated against Plaintiff for engaging in FMLA-protected activity. Specifically, Defendants demoted Plaintiff, changed his pay structure, decreased his pay, and terminated Plaintiff in retaliation for him engaging in FMLA-protected conduct and for Plaintiff engaging in FMLA-protected leave.

## E.  Jury Demanded

42.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of all issues and facts in this case and tenders herewith the requisite jury fee.

## F. Prayer for Relief

43.     As a result of the above-described actions, Plaintiff suffered damages. Thus, Plaintiff respectfully requests and demands judgment against Defendants for the following:

    a.   actual and consequential damages;

    b.   compensatory damages;

    c.   exemplary and punitive damages

    d.   equitable relief, including, but not limited to front pay;

    e.   Liquidated damages;

    f.   prejudgment and post-judgment interest;

    g.   Reasonable and necessary attorney's fees;

    h.   Costs of court; and

    i.   Any other damages and relief to which Plaintiff may be entitled, whether in law or equity.

Respectfully submitted,

**THE MORALES FIRM, P.C.**
6243 W. Interstate 10, Suite 132
San Antonio, Texas 78201
Telephone: (210) 225-0811
Facsimile: (210) 225-0821

BY: /S/Melissa Morales Fletcher
Melissa Morales Fletcher, *Of Counsel*
ATTORNEY-IN-CHARGE
State Bar No. 24007702
Email: Melissa@themoralesfirm.com
Allison Sarah Hartry
State Bar No. 24083149
Email: ahartry@themoralesfirm.com